**KROGER GROCERY & BAKING CO. v. STEWART.**

No. 13550.

Circuit Court of Appeals, Eighth Circuit.

Dec. 22, 1947.

Wayne Ely, of St. Louis, Mo., for appellant.

Will B. Dearing, of St. Louis, Mo. (J. O. Swink, of Farmington, Mo., and Moser, Marsalek, Dearing & Carpenter, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the plaintiff (appellee) in an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant (appellant).

The plaintiff's claim, briefly stated, is that on October 7, 1944, after she had made some purchases in defendant's store at Bonne Terre, Missouri, and while she had in one arm a baby and in the other a sack of coffee, she was invited by one of defendant's clerks to use the rear exit of the store;

that the clerk accompanied her to open the rear door; that as plaintiff approached it, she tripped over a box of merchandise in or near the passage-way leading to the door, fell and broke her leg. In her amended complaint plaintiff charged the defendant with negligence (1) in failing to keep the passage-way in a reasonably safe condition, (2) in failing to light the storeroom where plaintiff fell, and (3) in failing to warn plaintiff of the presence of the box. In its answer defendant denied that it was negligent, denied that plaintiff's injuries were caused by or resulted from any negligence on the part of defendant, and denied that plaintiff was invited to use the rear exit of the store. Defendant asserted that plaintiff's injuries were the result of her own negligence.

The issues raised by the pleadings were tried to a jury. At the close of the evidence, the defendant moved for a directed verdict in its favor on the ground that "The evidence shows that plaintiff was guilty of contributory negligence as a matter of law." The case was submitted to the jury. It returned a verdict for plaintiff, upon which was entered the judgment appealed from.

The defendant asserts that the court erred in not directing a verdict in its favor. It also asserts that the trial was unfair, because the court denied the defendant the right to adequately cross-examine the plaintiff, and because of improper remarks of counsel for the plaintiff made during the trial and in his argument to the jury, to which objection was taken by the defendant.

The denial of defendant's motion for a directed verdict merely constituted a ruling that, under the evidence, the issue of plaintiff's alleged contributory negligence was not a question of law for the court. The ruling was not erroneous. According to plaintiff's evidence, she was using the passage-way to the back door at the invitation of an employee of the defendant. She was not required to anticipate that there was any obstruction in or dangerously near the passage-way. Compare, Phillips Petroleum Co. v. Miller, 8 Cir., 84 F.2d 148, 154, 155; E. I. Du Pont de Nemours & Co. v. Frechette, 8 Cir., 161 F.2d 318, 323.

The plaintiff was apparently the only person who knew where she fell or what caused her fall. The case therefore turned upon the jury's appraisal of her credibility and the weight of her testimony. In her original complaint she had alleged that at the rear exit there was "a screen door to which was attached an extremely heavy spring for the closing of said door when not held or propped open; that the threshold of said door was worn and cracked and sagged when stepped upon; that there was a drop of twenty inches or more from said threshold * * * to the ground with no step intervening * * *." She also alleged that in attempting to leave the store by the rear door she came in contact with a box of merchandise in the passage-way, and "was thereby caused to stumble or to trip and fall out of the door of defendant's store and onto the ground; that in falling plaintiff was struck by the screen door aforesaid, which door was pulled by a heavy spring as aforesaid, and as a result of falling and being so struck, plaintiff was injured * * *." She then alleged in her original complaint that the defendant was negligent in failing to keep the passage-way in a reasonably safe condition and in permitting the box to be in or near the passage-way. The next paragraph of the original complaint stated: "That by reason of defendant's negligent acts, as aforesaid, plaintiff was caused to stumble, or to trip and fall out of the door of said defendant's store and was struck by the door as stated aforesaid, and that as a result of plaintiff's fall and being struck as stated aforesaid * * *," she suffered the injuries of which she complained.

In the plaintiff's amended complaint she made no reference to "an extremely heavy spring" on a screen door or to a worn, cracked or sagging threshold. She alleged in that complaint "that as a result of coming in contact with said box of merchandise which obstructed the aisle leading to said exit door, the plaintiff was caused to stumble and fall toward said door, and that, while in the act of falling over the threshold, the employe who was holding said screen door open, released it and said door struck plaintiff, and as a result of falling through said door onto the ground below,

plaintiff was injured as herein set out, * * * ."

At the trial the plaintiff, on direct examination, testified that as she walked through the rear room of the store "between the piles of feed and boxes going to the rear door," she stumbled over an orange crate and fell; that she had reached the steps leading from the rear room to the exit door when she struck the crate; that she had started to go up the steps; that Miss House, the clerk, who plaintiff testified had preceded her, was standing holding the screen door open; that she (plaintiff) did not fall completely out of the door, but that the upper part of her body was past the threshold.

On cross-examination, the plaintiff testified that the crate was piled up right by the door of the rear room; that the crate was on the floor, not on the steps; that she does not know whether she was going up the steps or walking across the floor when her foot hit the crate; that when she stated she had started to go up the steps she misunderstood her counsel; that she stumbled over the box before she reached the steps; that she does not know how far before; that she does not know just where the orange crate was; that she fell forward and partly out of the door; that her head and shoulders were outside; that the orange crate "was just laying there by the steps"; that she does not know whether the room was lighted or not; that the door did not hit her at any time; that she told Judge Swink (counsel who signed her original complaint) that there was a screen door to which was attached an extremely heavy spring; that the spring on the door had nothing to do with her falling; that she knew the spring was heavy because she saw it. Counsel for the defendant then asked this question: "Did you tell Judge Swink that the threshold of that door was worn and cracked and sagged when you stepped on it?" Counsel for plaintiff made the following objection: "Your Honor, I object to that. There is no complaint being made here that the threshold had a thing to do with it; as counsel well knows. How a petition is prepared—" The court sustained the objection. Counsel for defendant stated that plaintiff's original complaint charged that the threshold caused her to fall, and that he had a right to show she had changed her case. After a colloquy between counsel and the court relative to the right of defendant to question plaintiff with respect to a change in her account of the happening of the accident, counsel for defendant again asked, "Did you tell Judge Swink that the threshold of the door was worn and sagged when you stepped on it?" Counsel for plaintiff objected "to that as a collateral matter. What she told him has nothing to do with it." The court sustained the objection. Counsel for defendant then asked the plaintiff if she knew whether the threshold of that door was worn and sagged and cracked when she stepped on it. That was objected to and the court said: "Sustained. Any objection will be sustained along that line in the examination, to save time." After another objection was sustained to a question about the threshold, counsel for defendant said to the court: "Does Your Honor mean I cannot show that the accident happened some other way than she now claims, that she claimed something else?" The response of the court was: "No, I do not mean that at all. I do mean that the cross examination will not be permitted. You can show it by some other witness."

On further interrogation by counsel for defendant, the plaintiff testified that there was no step outside the door, and that she fell across the door. She was then asked this question: "When you first— when you talked to Judge Swink about this case, and when you first filed this suit, did you claim you fell out the door?" The court sustained an objection to that question. After some discussion between the court and counsel for defendant, relating to further interrogation of the plaintiff about her original complaint, counsel said, "May the record show that the Court will not permit me to ask the question, either outside or in the hearing of the jury?" The court's response was, "The record will so show." On redirect examination, counsel for plaintiff asked the witness the question: "Counsel has interrogated you as to what has been said in the petition [original complaint]. Did you ever read or write?" Her answer was, "No". On recross examination, in

answer to the question, "You know whether you fell out of the door or inside of the door?", she testified, "I fell out of the door." Plaintiff's original complaint was received in evidence and read to the jury.

In his opening argument to the jury, counsel for plaintiff said: "All the Kroger people had to do was to keep that aisle free of boxes. If they are going to permit people to go out there, not alone tell them to go out through there, I say to you under the law it is the duty of the Kroger Company to keep that aisle way clear, and then, having directed some unfortunate person to pursue that way to get out of the store, and you render that person a hopeless cripple, have that company in a court of justice have some lawyer come before you who has tried everything except the facts—" Counsel for defendant interposed and said, "I object to that argument and statement· and ask that the jury be discharged and the costs of the case taxed against Mr. Dearing. It is an absolutely unwarranted statement." The court overruled the objection. Counsel for defendant then asked that the jury be instructed to disregard the statement "that some lawyer came here to try everything but the facts." The court overruled that request.

We think enough has been said about the trial of this case to demonstrate its unfairness. Unfortunately, the trial at times deteriorated into a sort of brawl between opposing counsel, distracting to the court and no doubt equally distracting to the jury. Under the circumstances, it seems more probable that the jury's verdict represents its appraisal of the relative merits of the attorneys than a considered judgment of the merits of the case based upon the evidence and the law.

Counsel for the defendant had the right to cross-examine the plaintiff with respect to apparent discrepancies between the allegations of her pleadings and her testimony at the trial, and to show, if he could, that she had changed her story as to how and where she fell and as to what caused or contributed to the injuries she received. If the court had limited defendant's cross-examination only with respect to the threshold, we would have no criticism of that action, but the court went further than that and cut off inquiry on other subjects.

"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even .though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." Alford v. United States, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624. To cut off all inquiry on a subject with respect to which the defense was entitled to make reasonable inquiry is an abuse of discretion and prejudicial error. A trial court is under no obligation to protect a witness from being discredited on cross-examination, "short of an attempted invasion of his constitutional protection from self incrimination, properly invoked." Id., at page 694 of 282 U.S., at page 220 of 51 S.Ct., 75 L.Ed. 624. Moreover, a greater latitude is allowable in the cross-examination of a party who takes the witness stand than with respect to other witnesses. Rea v. Missouri, 17 Wall 532, 542, 84 U.S. 532, 542, 21 L.Ed. 707. See, also, and compare, Toplitz v. Hedden, 146 U.S. 252, 254, 13 S.Ct. 70, 36 L.Ed. 961; Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 2 Cir., 32 F.2d 195, 197, 198; Stolte v. Larkin, 8 Cir., 110 F.2d 226, 231, 233.

With respect to the alleged misconduct of counsel for plaintiff in his argument to the jury, his insinuation that opposing counsel had "tried everything except the facts" had nothing whatever to do with the merits of the controversy between the parties. The remark was improper and offensive and the refusal of the court to direct the jury to disregard it was error. The attitude of this Court and of other federal appellate courts toward the interjection of irrelevant personalities and appeals to prejudice or passion in final argument, has been so clearly stated in many cases as to call for no further discussion. New York Central R. Co. v. Johnson, 279 U.S. 310, 317-319, 49

S.Ct. 300, 73 L.Ed. 706; Union Pacific R. Co. v. Field, 8 Cir., 137 F. 14; Brown v. Walter, 2 Cir., 62 F.2d 798; F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 442, 443, 98 A.L.R. 681; Chicago & N. W. Ry. Co. v. Kelly, 8 Cir., 74 F.2d 31, 36, 37, Id., 8 Cir., 84 F.2d 569, 573-576; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 338-344; Palmer v. Miller, 8 Cir., 145 F.2d 926, 932; Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55, 64. This Court, in the interest of an orderly administration of justice, will continue to do all that reasonably may be done to assure litigants that a trial in a District Court of the United States shall be so conducted that the verdict of the jury fairly may be assumed to be based upon an impartial consideration of the evidence and the' applicable law.

Other matters of which the defendant complains are unlikely to recur upon a new trial and need not be discussed.

The judgment appealed from is reversed and the case is remanded for a new trial.