**Betty L. HARRINGTON, Administratrix of the Estate of Charles Socinski, Plaintiff-Appellee,**

v.

**Benjamin SHARFF, Defendant-Appellant. No. 40, Docket 26961.**

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1961.

Decided June 20, 1962.

334

O'Neill, Delany & Valente, Rutland, Vt., for plaintiff-appellee.

Kinney & Cook, Rutland, Vt., for defendant-appellant.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

In this diversity jurisdiction negligence action tried in the United States District Court for the District of Vermont judgment was entered upon a jury verdict of $15,000 in favor of the plaintiff, the administratrix of the estate of Charles Socinski. The defendant appeals from that judgment and from the denial of his motions after verdict. The claimed errors upon which the appeal is based are discussed later in the opinion after the recitation of the facts.

The automobile accident out of which this lawsuit arose occurred about 2:30 P.M. on February 8, 1958, in Ludlow, Vermont. Although there is some dispute as to the circumstances of the accident, we must view the evidence in the light most favorable to the plaintiff. Intending to stop only briefly to pick up his bag and check out of the tourist home where he had been staying, the defendant parked his car in the traveled portion of the highway in front of that establishment although he knew that the proprietor had provided off-street parking facilities for his patrons. With his wife as a passenger in his automobile, the plaintiff's decedent, Socinski, was traveling on the same highway at 20 to 30 miles per hour, in the same direction in which the defendant had been traveling before he had stopped. Socinski had to drive around a curve as he approached the place where the defendant's car was parked. A snowbank five feet or more in height on the side of the highway obstructed Socinski's view of the defendant's automobile as the decedent rounded the curve. The road surface was slippery with snow.

Meanwhile a truck was approaching in the opposite direction at 15 miles per hour. The highway was seventeen to nineteen feet in width. The defendant's car protruded six feet into the road, thus leaving only eleven to thirteen feet of roadway for the Socinski car, six to six and one half feet in width, and the truck, seven to seven and one half feet in width, to meet and pass by each other. Twenty to twenty-five feet before Socin-ski's car would have come abreast of the defendant's parked car it collided with the oncoming truck. The point of contact was near the center, but on the truck's side of the highway. The collision damaged the left front ends of both vehicles. No eye-witnesses to the accident testified at the trial. Mrs. Socinski, the passenger, was looking down at her dog when the collision occurred, and the impact knocked her unconscious. However, just prior to the accident she saw her husband put his foot on the brake and felt the car slow down somewhat.

At the moment the accident occurred the defendant was on the porch of the tourist home about to go inside. When he heard the crash he turned around and saw the drivers get out of their vehicles and start arguing. Then he went upstairs to get his bag. He remained upstairs about ten minutes, paused on the porch for a bit upon his return and then entered his automobile "rather hurriedly" without talking to anyone, and drove off.

That day Doctors Neil and Stickney examined Socinski. They found him to have severe pain in his chest above the nipple line; bruises on his face, left shoulder, chest, elbows, knees, right forefinger, and other parts of his body; and possible fractured ribs. Although under Dr. Stickney's subsequent care and treatment Socinski recovered from most of the rest of his injuries, he never really got over the injury to his chest, and soon after the accident he began to lose weight. On March 10, 1958, Socinski was well enough to return to work, but he coughed a lot, his chest and throat still pained him, and it hurt him to breathe. Between August 11, 1958 and October 10, 1958, he underwent X-ray examinations and biopsies of his esophagus and vocal cords. The reports from these examinations were negative. In November, 1958, because Socinski failed to improve, Dr. Stickney referred his patient to Dr. Ross, a general surgeon. In December, Dr. Ross performed another biopsy, which disclosed metastatic car-

cinoma, the spread of cancer, in Socinski's left clavicle. By that time the patient was too weak to be helped, and he died on December 10, 1958.

Doctors Stickney and Ross, testifying for the plaintiff, asserted that the accident could have caused a pre-existing cancer to spread and thus could have hastened death. Dr. Ross also believed that trauma-damaged tissue was more susceptible to carcinoma metastasis than was normal tissue, and that a single blow could cause cancer. He further testified that cancer could be present but undetected for some time. With this last opinion the defendant's medical witness, Dr. Powers, agreed. Ross also believed that a blow could increase the spread of cancer cells. The defendant offered the testimony of two doctors, Williams and Powers. Dr. Williams testified that a blow could not cause cancerous cells to spread, and both doctors for the defense were of the opinion that a single blow could not create a cancer where none had existed previously.

After the evidence had been closed, and during the defendant's summation, the court admitted a page from an investigating officer's report of the accident, which indicated that it was the officer's opinion that the way the defendant had parked his car contributed to the accident.

The administratrix sought to recover damages under the Vermont Survival of Causes of Action Statute, Vt.Stat.Ann. Tit. 14 § 1453 (1958), and the Vermont Wrongful Death Statute, Vt.Stat.Ann. Tit. 14 § 1492 (1958), as amended. At the close of the plaintiff's case and again at the conclusion of all the evidence, the defendant moved for a directed verdict on the grounds that the plaintiff had failed to prove that the defendant was negligent, had failed to prove that the defendant's doings were a proximate cause of Socinski's injuries and subsequent death, and had failed to prove that decedent had been free from negligence. The court denied these two motions and submitted the case to the jury, which returned a plaintiff's verdict. The defend-

ant then moved for a new trial, based on alleged trial errors; and also for judgment notwithstanding the verdict, based on the grounds previously asserted in support of his motions for a directed verdict. The court denied these motions and entered judgment on the verdict. The defendant now appeals to this court from that judgment and from the denial of his post-verdict motions. He asserts, first, that the plaintiff failed to prove a prima facie case and that he is entitled to judgment; second, that even if there were evidence of defendant's negligence sufficient to make out a prima facie case of liability there was no evidence that any negligence of the defendant was the cause of the cancerous condition that caused Socinski's death, and that the court erred in permitting the jury to consider on the question of damages that there was a connection between the accident and the cancerous condition.

 Defendant asserts that judgment should be entered for him forthwith because there was insufficient evidence for the jury to find him negligent or for it to find the plaintiff's intestate free from negligence. With this we disagree. There was evidence that the defendant parked his car on the traveled portion of the highway near a curve, leaving insufficient room for other cars proceeding in opposite directions to pass safely. Snowbanks blocked the vision of drivers coming around the curve. The defendant knew that off-street parking was provided for him, and he was aware of the curve in the highway. Considering the evidence in the light most favorable to the plaintiff, as we are required to do in passing on the defendant's contention that he was entitled to a directed verdict, and after verdict entitled to judgment notwithstanding the verdict, there was sufficient evidence for the court to submit the issue of defendant's negligence to the jury.

 Also, it was proper for the trial court to permit the jury to decide whether the plaintiff's decedent was exercising due care. Although Vermont now places the burden on the defendant

of proving that the plaintiff was contributorily negligent, Vt.Stat.Ann. Tit. 12 § 1024 Supp. 1961, under the law that governs the present case it was the plaintiff's affirmative duty to show that her decedent was exercising due care. However, to avoid a directed verdict, the plaintiff did not have to produce direct evidence of her decedent's care; circumstantial evidence which warranted an inference of due care was sufficient. Benoit v. Marvin, 120 Vt. 201, 138 A.2d 312 (1958). Heustis v. Lapham's Estate, 113 Vt. 191, 32 A.2d 115 (1943). Moreover, a driver has the right to assume others will not act negligently. Miller Chevrolet Co. v. Sears, 118 Vt. 302, 108 A.2d 529 (1954). In this case there was evidence that Socinski was driving 20 to 30 miles per hour, that a curve and a snowbank obstructed his view of the defendant's parked car, and that he applied his brake, slowing his car. From this evidence the jury could have reasonably concluded that Socinski came around the curve at a reasonable speed, suddenly saw the defendant's parked car and the oncoming truck, attempted to squeeze between the two, and collided with the truck. The defendant asserts that the plaintiff's decedent might have driven around the curve too fast, skidded across the center of the highway, and thus hit the truck. Since there was evidence to support the former explanation, the choice between the two theories was for the jury to make. Viewing the evidence in a light most favorable to the plaintiff, Hill v. Stringer, 116 Vt. 296, 75 A.2d 657 (1950), we hold that the defendant's motion for judgment n. o. v. was properly denied. Cf. Slate v. Hogback Mountain Ski Lift, Inc., 122 Vt. 8, 163 A.2d 851 (1960).

▆▆▆ The defendant further asserts on this appeal that there was no evidence from which the jury could conclude that the accident caused the decedent's cancerous condition, which hastened his death. Whatever the defendant means by "cancerous condition," there was significant testimony to support a finding that the accident aggravated a pre-exist-

ing cancer in the decedent. Three doctors testified that a blow could spread cancer cells. Dr. Ross testified that trauma-damaged tissue was more susceptible to the spread of cancer than was healthy tissue. And there was uncontradicted testimony by two doctors that cancer could be present in the body for some time without detection. The doctors who testified for the plaintiff stated that in their opinion the injuries Socinski received from the collision caused his cancer to spread and thus shortened his life. Other courts have allowed recovery for aggravations of a pre-existing cancer. E. g., Charleston Shipyards, Inc. v. Lawson, 227 F.2d 110 (4 Cir. 1955); Blackfoot Coal & Land Corp. v. Cooper, 121 Ind.App. 313, 95 N.E.2d 639 (1950). Thus, the court below was correct in allowing the jury to consider this issue in determining the amount of the plaintiff's damages.

▆▆▆ The defendant contends that the trial judge improperly *sua sponte* admitted into evidence a certain page, page three, of a police report of the accident. The unusual circumstances surrounding this occurrence require us to reverse the judgment below and remand the case for a new trial. During the course of the trial plaintiff's counsel offered in evidence an official report prepared by Hobart C. Paige, one of the officers who had investigated the accident. Page three of the report stated that the defendant's parked automobile contributed to the collision. Defendant objected to the introduction of page three on the ground that it was hearsay and that it set forth a conclusion which only the jury could draw. The court excluded that part of the report. Later, during the defendant's summation to the jury, the defendant's counsel stated that no officer had said that the parked car was to blame in any way for the accident. The plaintiff objected to this, and, to cure this misleading argument, the court told the plaintiff to introduce page three of the report, previously excluded from evidence. The defendant took an exception to this procedure, asserting that it was an abuse of

the court's discretion to permit the introduction of such evidence at that late stage in the trial.

■ We agree with the defendant that in this instance the court overstepped the proper bounds of its discretion. It is true that the function of the judge is more than that of a spectator, that sometimes he must take steps of his own to prevent one side from taking an unfair advantage. See 6 Wigmore, Evidence § 1806 n. 1 (3d ed. 1940); cf. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943); Fadden v. McKinney, 87 Vt. 316, 89 A. 351 (1914). But, on the other hand, the judge must always be careful in curing improper argument so as not to give the objecting side an unfair advantage. To correct the misleading inference, if misleading inference there was, made by the defendant's lawyer in the present case the court could have required counsel to withdraw the objectionable statement, reprimanded him for his deceptive remark, and instructed the jury at some length not to be misled by counsel's statement. See New York Cent. R. R. v. Johnson, 279 U.S. 310, 317–318, 49 S.Ct. 300, 73 L.Ed. 706 (1929); Kroger Grocery & Baking Co. v. Stewart, 164 F.2d 841 (8 Cir. 1947); F. W. Woolworth Co. v. Wilson, 74 F.2d 439, 98 A.L.R. 681 (5 Cir. 1934); Knight v. Willey, 120 Vt. 256, 138 A.2d 596 (1958); Duchaine v. Ray, 110 Vt. 313, 6 A.2d 28 (1939). But in placing the previously excluded part of the officer's report in evidence to show that an officer did impute blame to the defendant, the court gave the plaintiff a far greater tactical advantage than that to which she was entitled. The court introduced this piece of evidence after the close of all the other evidence, without the plaintiff having requested the introduction, and without according the defendant an opportunity to introduce evidence to rebut the statement in the report. We think that under these circumstances it was likely that the jury, to the defendant's prejudice, gave the hearsay undue probative significance, and therefore the defendant is entitled to a new trial.

■ Since the case has to be retried, we think it appropriate for us to comment on the defendant's final contention—that the court committed error in instructing the jury that it could consider the defendant's leaving the scene rather hurriedly without talking to anyone as evidence of a consciousness of liability. In criminal cases it is well established that evidence that the accused fled is admissible to show an awareness of guilt on his part. State v. Shaw, 73 Vt. 149, 50 A. 863 (1901); 2 Wigmore, Evidence § 276(4) (3d ed. 1940). Several courts have held that evidence of flight from the scene of an accident is admissible in a civil action tending to prove that the fleer believes himself to be responsible for the mishap. Kotler v. Lalley, 112 Conn. 86, 151 A. 433 (1930); Scott v. Marshall, 90 Ohio App. 347, 105 N.E.2d 281 (1951), appeal dismissed, 156 Ohio St. 270, 101 N.E.2d 906 (1951); Greenwood v. Bailey, 28 Ala.App. 362, 184 So. 285 (1944); Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764 (1930). The law of Vermont is not inconsistent with these cases. See Chatfield v. Morgan, 99 Vt. 337, 131 A. 845 (1926). Therefore, it was proper for the trial judge in this case to instruct the jury that if it found that the defendant left the scene of the accident hurriedly and silently, it could consider this as some evidence of an awareness of responsibility on his part.

The judgment below is reversed and the case remanded for a new trial.

LEONARD P. MOORE, Circuit Judge (concurring).

Although I agree with the conclusion that there should be a new trial, I cannot accept what I regard as certain factual inaccuracies and erroneous legal principles in Judge Waterman's opinion. To say that from the evidence the jury could have concluded that the Socinski car "attempted to squeeze between the two [i. e., defendant's parked car and the truck]" is in direct conflict with the opin-

ion's assumption that the collision occurred "Twenty to twenty-five feet before Socinski's car would have come abreast of the defendant's parked car."

Nor can I find from the conceded facts any justification for submitting to the jury "defendant's leaving the scene rather hurriedly without talking to anyone as evidence of a consciousness of liability." The cases cited that flight from the scene of an accident tends to prove the party fleeing believes that he is responsible for the mishap are completely inapposite here. They are mostly of the hit-and-run type. Here the facts as produced by plaintiff establish that defendant was on the porch of the tourist home when he heard the crash. He turned, saw the vehicles and noted that the drivers were arguing. Instead of dashing for his car and driving away, he entered the tourist home, emerged about ten minutes later, noted the cars still there and then drove off. A witness thought that he walked to his car rather hurriedly. The trial court stressed defendant's failure to talk to anyone at the scene of the accident as a factor in showing consciousness of liability on his part. Surely it cannot be contended that defendant should have accosted both drivers and cross-examined them as to why they collided or that he should have vocally registered a public protestation that his parked car was in no way responsible for the accident. In my opinion the court's charge on this subject cannot be supported as a matter of law.

Upon any new trial, the problem relating to Officer Paige's report will again arise. He did not see the accident. The statements of each driver were hearsay and the Officer's conclusions as to the cause of the accident were inadmissible under fundamental principles of evidence. The trial court properly ruled that the officers "could not state that in their opinion Sharff was to blame for the accident." His exclusion of page 3 of the Accident Report was proper because the question of Sharff's parking as contributing to the accident was "for the Jury, and not for Officer Paige to determine." (Tinney v. Crosby, 112 Vt. 95, 100, 22 A.2d 145, 147; Landry v. Hubert, 100 Vt. 268, 275, 137 A. 97, 100; Desmarchier v. Frost, 91 Vt. 138, 143, 99 A. 782, 783.)

CLARK, Circuit Judge (dissenting).

I agree with Judge WATERMAN's opinion in so far as it approves various steps taken in this generally well tried case and only part company with him when, at the crucial point of decision, he orders a new trial on grounds to me wholly inadequate. Specifically I agree that there was sufficient evidence to require submission to the jury of the questions of defendant's negligence, plaintiff's intestate's due care, and causation of the latter's cancerous condition. I also concur in the conclusion holding correct the instruction that the jury might consider defendant's quick departure from the scene as indicating consciousness of liability. But I cannot agree that Judge Gibson abused his discretion in acting quickly and decisively to correct a misstatement of defense counsel in summation by ordering a showing of the precise facts. In my view we ought to commend him for his action. I am the more convinced of this when I see the concealing and confusing alternative asserted in the opinion to be the proper form of corrective action. Here, as so often, the simple truth is more useful, and less harmful to the parties, than any form of vague apologetics which cover up the actual facts. The defendant's negligence was gross, the jury's verdict moderate, and the resulting judgment fair and just. I think appellate interference here is peculiarly regrettable.

Now with respect to the police officer's report, it should be noted that it was erroneously excluded in the first instance. It was a record made in the ordinary course of police business, and hence was admissible under the Business Records Act, 28 U.S.C. § 1732. This we have just held in a substantially similar case, United States v. New York Foreign Trade Zone Operators, 2 Cir., 304 F.2d 792; and see also Pekelis v. Transcontinental

**340**

& Western Air, Inc., 2 Cir., 187 F.2d 122, 23 A.L.R.2d 1349, certiorari denied Transcontinental & Western Air, Inc. v. Pekelis, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374, and McKee v. Jamestown Baking Co., 3 Cir., 198 F.2d 551. Actually the report on its face was very fair and restrained. It recited the general nature of the accident and the statements of the drivers of the two vehicles in actual collision, and then continued with the part excluded on defendant's objection, viz., "Investigating officers believed that the parked vehicle contributed to the cause of the accident as it was parked on a curve which was blind to the operator of Vehicle #1, Socinski by the snow ridge on his right side of the highway." It thus was advanced only as an expression of opinion. Moreover, the reporting officers were available for cross-examination. As the statute itself explicitly provides, any question as to the circumstances of the making of the record goes to its weight, but not to its admissibility. See my discussion in United States v. New York Foreign Trade Zone Operators, supra.

When, therefore, defense counsel argued in summation that no officer had said that the parked car was to blame in any way for the accident, this misstatement of fact called for prompt correction by the judge. 6 Wigmore on Evidence §§ 1806, 1807 (3d Ed. 1940); Viereck v. United States, 318 U.S. 236, 248, 63 S.Ct. 561, 87 L.Ed. 734. So after objection by plaintiff and colloquy with counsel the judge then admitted the excluded portion of the report. The judge did not act hastily, but only after careful explanation to counsel, who of course objected, but had no alternative suggestion. Again in his charge the judge carefully explained that it was the jury's findings, not the officers' opinion, which controlled;

and hence he had excluded the statement as being opinion, until he had to admit it to correct the misstatement in argument. Thus he performed his conceded duty to act in what seems to me the most desirable manner, namely, by showing the true facts, and thus disposing of the matter swiftly and without undue emphasis. This was all the more appropriate in view of the original admissibility of the report.

My brothers say, however, that the judge should have required counsel to withdraw the statement, reprimanded him for his deceptive remark, and instructed the jury *at some length* not to be misled by counsel's statement. This seems to me at once inadequate and excessive. Apparently the jury was never to know the exact facts as to the officers' opinion. Naturally the jurors would speculate as to what this was all about, and their speculation well might be along quite erroneous lines. At the same time it was clear that defense counsel was being severely reprimanded for something. This might easily make the matter worse in the jury's guess than it actually was. I submit that this course of reproof based upon concealment of the facts was wholly undesirable and prejudicial to the parties, particularly the defendant, while the course taken by the judge in the exercise of his discretion was admirable.

I am not one who believes jury trial a necessary or fully satisfactory device for settling the vast problems stemming from the automobile accident.[1] But while we have it required by the law of the land, I do believe we should allow it to operate without a surfeit of restrictive limitations upon its natural scope. I cannot believe that this dubious reversal does other than cast doubt upon the jury process in this important area of litigation.

1. Compare James, The Columbia Study of Compensation for Automobile Accidents: an Unanswered Challenge, 59 Colum.L. Rev. 408 (1959); Leslie, The Saskatchewan Automobile Insurance Act, 44 J.Am. Jud. Soc'y 6 (1960); Shumiatcher, The Saskatchewan Automobile Accident Insurance Plan, 20 Law.Guild Rev. 114 (1960).